STRATON ET AL. v. NEW, TRUSTEE IN BANKRUPTCY, ET AL.

No. 137. Argued March 3, 1931.—Decided April 20, 1931.

*Mr. Randolph Bias* for Straton et al.

*Mr. Arthur F. Kingdon,* with whom *Mr. E. A. Hansbarger* was on the brief, for New et al.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The District Court for Southern West Virginia entered an order in the bankruptcy of the Fall Branch Coal Company enjoining commissioners appointed by a West Virginia state court from proceeding with the sale of certain real estate of the bankrupt pursuant to a decree of that court. The petitioners were the trustee in bankruptcy and two mortgagees.

The petition alleged that the commissioners were advertising for sale only the property of the bankrupt in West Virginia, that it would be advantageous to all parties to have this property sold with property of the bankrupt situate in Kentucky, and that the bankruptcy court had exclusive jurisdiction to make the sale. The respondents in their answer denied the right of the District Court to enjoin the proceedings in the state court, and appealed from an order awarding an injunction.

April 11, 1927, one Alley obtained judgment against the coal company in the Circuit Court of Mingo County, West Virginia, which was docketed May 5, 1927, and thus be-

came a lien on its real estate in that county. February 20, 1928, Alley filed in the same court a judgment creditors' suit against the coal company, and made parties thereto all creditors having liens against its real estate, including the two mortgagees who were co-petitioners with the trustee in the bankruptcy court. In his bill he prayed that the liens and assets be marshalled and that the company's real estate be sold and the proceeds distributed among the lien claimants according to their respective rights. The cause was duly matured and, at April term, 1928, was referred to a commissioner in chancery to report the real estate owned by the debtor and the liens thereon. At the July term, 1928, the commissioner presented his report, and thereupon the respondents were appointed to make sale of the property. August 4, 1928, sixteen months after rendition of Alley's judgment, and five and one-half months after the filing of the creditors' bill, the coal company filed its voluntary petition in bankruptcy, and on October 11, 1928, while the commissioners of the state court were proceeding to carry out its order of sale, the petition was filed to enjoin them from further proceeding.

Upon these facts the question certified is:

Where creditors have obtained and docketed judgments constituting liens on the real estate of defendant, and have instituted a creditors' suit in a state court to marshal and enforce the liens and sell the real estate subject thereto, does the bankruptcy of defendant occurring more than four months after the institution of the creditors' suit oust the state court of jurisdiction, or vest in the court of bankruptcy power to enjoin further proceedings in the state court?

The purpose of the Bankruptcy Law, passed pursuant to the power of Congress to establish a uniform system of bankruptcy throughout the United States, is to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the

creditors. The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. This jurisdiction is exclusive within the field defined by the law, and is so far *in rem* that the estate is regarded as *in custodia legis* from the filing of the petition. *Acme Harvester Co.* v. *Beekman Lumber Co.*, 222 U. S. 300. It follows that liens cannot thereafter be obtained nor proceedings be had in other courts to reach the property, the district court having acquired the exclusive right to administer all property in the bankrupt's possession. *Lazarus* v. *Prentice*, 234 U. S. 263. *White* v. *Schloerb*, 178 U. S. 542. *Murphy* v. *John Hofman Co.*, 211 U. S. 562. *United States Fidelity & G. Co.* v. *Bray*, 225 U. S. 205. *Hebert* v. *Crawford*, 228 U. S. 204. It may inquire into the validity of liens, marshal them, and control their enforcement and liquidation. *Isaacs* v. *Hobbs Tie & Timber Co.*, 282 U. S. 734, and authorities cited; *Whitney* v. *Wenman*, 198 U. S. 539. Remington, Bankruptcy (3d ed.) § 2472.

Though a lien be not discharged by bankruptcy, its owner may not, without the bankruptcy court's permission, institute proceedings in a state court to enforce it, since his so doing might interfere with the orderly administration of the estate. Thus a mortgagee will be restrained from instituting or proceeding further in a foreclosure action, begun after the date of the petition in bankruptcy.[1] And a creditor holding a valid judgment

---

[1] *Isaacs* v. *Hobbs Tie & Timber Co.*, *supra*. *In re Pittelkow*, 92 Fed. 901. *In re Ball*, 118 Fed. 672. *In re Jersey Island Packing Co.*, 138 Fed. 625. *In re Zehner*, 193 Fed. 787: *In re Hasie*, 206 Fed. 789. *Matthews* v. *Webre Co.*, 213 Fed. 396; affirmed *sub. nom. Pugh* v. *Loisel*, 219 Fed. 417 (cert. denied, 238 U. S. 631). *McLoughlin* v. *Knop*, 214 Fed. 260. *Cohen* v. *Nixon & Wright*, 236 Fed. 407. *In re Larkin*, 252 Fed. 885. *In re North Star Ice & Coal Co.*, 252 Fed. 301. *In re U. S. Chrysotile Asbestos Co.*, 253 Fed. 294. *In re*

more than four months old will be enjoined from enforcing its lien by suit brought after the date of the petition.[2] And as the lien created by a judgment entered within four months is avoided, the court of bankruptcy has jurisdiction to administer the property regardless of the lien and will restrain the prosecution of an action to enforce it.[3]

The bankruptcy law contains no express provision preserving liens acquired by legal proceedings more than four months before the petition is filed. But it is clearly implied that they shall be saved from the operation of the law, for § 67 (f)[4] voids only liens obtained by legal proceedings within that period. It has consequently been held that those acquired earlier, if valid under state law, are preserved, and will be accorded priority by the bankruptcy court in distribution of the estate, in accordance with applicable local law.[5]

There is no dispute concerning these propositions. Appellants, however, assert that the jurisdiction in bankruptcy to ascertain, marshal and enforce liens, is not exclusive, but concurrent with that of other courts competent to that end, if the liens in question are not discharged but recognized as valid in bankruptcy, and that the rule of comity is applicable that the court first lawfully taking jurisdiction shall retain it. *Wabash R. Co.* v.

*Oswegatchie Products Co.,* 279 Fed. 547. *Brown Shoe Co.* v. *Wynne,* 281 Fed. 807. *First Trust Co.* v. *Baylor,* 1 F. (2d) 24. *In re Dyer,* 8 F. (2d) 376. *Allebach* v. *Thomas,* 16 F. (2d) 853. *In re Holstein Harvey, Inc.,* 26 F. (2d) 798.

[2] *In re L'Hommedieu,* 146 Fed. 708. *In re Arden,* 188 Fed. 475. *In re Schow,* 213 Fed. 514.

[3] *Clark* v. *Larremore,* 188 U. S. 486. *In re Albright,* 18 F. (2d) 591. Remington, Bankruptcy (3d ed.) § 1905.

[4] U. S. C., Tit. 11, § 107 (f).

[5] *In re Wood,* 95 Fed. 946; *In re L'Hommedieu,* 146 Fed. 708; *In re Koslowski,* 153 Fed. 823; *In re Torchia,* 185 Fed. 576; *In re Randolph,* 187 Fed. 186; *In re Zeis,* 245 Fed. 737; *In re Fraser,* 261 Fed. 558.

*Adelbert College,* 208 U. S. 38. *Harkin* v. *Brundage,* 276 U. S. 36. They contend that when the petition was filed in this case, the state court was proceeding in a suit within its jurisdiction and had taken possession of the *res* for the purpose of enforcing such a lien.

The certificate states that the judgment of the plaintiff in the creditors' suit constituted a lien on real estate from a date sixteen months prior to the initiation of the bankruptcy proceeding. It is obvious that it and any other judgments involved in that suit, and the mortgage liens which were to be marshalled in it, including those of the two mortgagees who joined in the petition for injunction against further action by the state court, were valid notwithstanding the bankruptcy, because the creditors' suit was filed five and one-half months before the petition in bankruptcy, and all such other judgments and liens must then have been in existence and matured, or they would not have been proper subjects for the state court's action.

If appellants are correct in their contention that the creditors' suit was no more than a proceeding to enforce liens saved from discharge by the subsequent bankruptcy of the debtor, it follows, as they claim, that the District Court sitting in bankruptcy had no power to enjoin that action.

In *Metcalf* v. *Barker,* 187 U. S. 165, Lesser Brothers were adjudged bankrupts on their own petition, on May 12, 1899. They had on October 2, 1896, being insolvent, transferred all their property, partnership and individual, to certain favored creditors. On October 22, 1896, and October 29, 1896, Metcalf recovered judgments in the Supreme Court of the State of New York against the Lessers, upon which executions were issued and returned unsatisfied. On December 17, 1896, Metcalf commenced a judgment creditors' action in the Supreme Court of New York, which came to trial on December 17, 1897, as a result

whereof the transfers were adjudged fraudulent and void as to plaintiff. The transfers had involved both personal property and real estate. The judgment of the court set aside the transfers of personal property and of the real estate in favor of the plaintiff. Meantime receivers had been appointed for the Lessers and the judgment of the Supreme Court determined that the tangible property and its proceeds then in the hands of the receivers, and certain claims by the receivers, were to be administered by them for the benefit of the creditors of the partnership, including Metcalf, while the real estate involved became subject to the lien of the judgments of Metcalf as of October 22 and 29, 1896.

From this judgment there were appeals, as a result of which the decree in favor of Metcalf did not become final until March 12, 1900. On March 8, 1900, the trustee in bankruptcy procured from the United States District Court an order on Metcalf to show cause why an injunction should not issue enjoining him from taking any further proceedings under any judgment in the creditors' action. Objection was made to the jurisdiction of the court, which was overruled, and the injunction made permanent. Metcalf presented a petition to revise to the Circuit Court of Appeals, which certified to this Court certain questions, amongst others, whether the District Court had jurisdiction to make the injunction order, and whether Metcalf, by the commencement of the creditors' action, acquired a lien on the property of the bankrupts superior to the title of the trustee. This Court answered that the District Court had no jurisdiction, and that Metcalf did acquire such a lien.

The bill was a technical creditors' bill; its purpose was to subject equitable assets to the lien of a judgment which the judgment did not bind at law. This Court held that the lien when established related back to the date of the filing of the bill, which was much more than four months

before the initiation of the cause in bankruptcy. It was urged that at the date of bankruptcy the claim was contingent and was only an equitable lien, and that in truth and in substance the judgment was recovered within four months of bankruptcy, and under § 67 (f) must be declared null and void. This Court overruled the contention, quoted § 67 (f), and said (p. 174):

" In our opinion the conclusion to be drawn from this language is that it is the lien created by a levy, or a judgment, or an attachment, or otherwise, that is invalidated, and that where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed to be null and void on adjudication, but its validity is recognized. . . . A judgment or decree in enforcement of an otherwise valid preëxisting lien is not the judgment denounced by the statute, which is plainly confined to judgments creating liens."

In *Clarke* v. *Larremore,* 188 U. S. 486, a judgment was recovered, but did not constitute a lien on the debtor's personal property. Within four months prior to the filing of a bankruptcy petition the judgment creditor issued execution under which levy was made on the debtor's goods. It was held that the levy and the sale thereunder were avoided. The Court said: " The judgment in favor of petitioner against Kenney was not like that in *Metcalf* v. *Barker,* . . . one giving effect to a lien theretofore existing, but one which with the levy of an execution issued thereon created the lien. . . ."

In *Globe Bank* v. *Martin,* 236 U. S. 288, the Court said: " The difference, having the provisions of the act in view, between the beginning of a proceeding to assert liens that existed more than four months before the filing of the petition in bankruptcy, and the attempt to create them by attachment or other proceedings within four months, has been recognized in decisions of this court " (citing *Metcalf* v. *Barker*).

326

Following these cases the federal courts have with practical unanimity held that where a judgment which constitutes a lien on the debtor's real estate is recovered more than four months prior to the filing of the petition, the bankruptcy court is without jurisdiction to enjoin the prosecution of the creditor's action, instituted prior to the filing of a petition in bankruptcy, to bring about a judicial sale of the real estate.[6]

---

[6] *White* v. *Thompson,* 119 Fed. 868; *In re Koslowski,* 153 Fed. 823; *In re Pilcher,* 228 Fed. 139; *In re Brinn,* 262 Fed. 527; *In re Maddox,* 280 Fed. 227; *In re Thompson,* 288 Fed. 385; *In re Berlowe,* 7 F. (2d) 898; *Wilkinson* v. *Goree,* 18 F. (2d) 455; *In re Van Blokland,* 20 F. (2d) 1016; *In re Conservative Mtge. & Guaranty Co.,* 24 F. (2d) 38; *Whitney* v. *Barrett,* 28 F. (2d) 760. Compare *Blair* v. *Brailey,* 221 Fed. 1; *Brown Shoe Co.* v. *Wynne,* 281 Fed. 807. See also, *Hillyer* v. *LeRoy,* 179 N. Y. 369; 72 N. E. 237. Contra: *In re Baughman,* 138 Fed. 742. It is also well settled that where an attachment is levied more than four months prior to bankruptcy, the prosecution of the claim to judgment and sale within the four months will not be enjoined or the sale set aside. *In re Blair,* 108 Fed. 529; *In re Beaver Coal Co.,* 110 Fed. 630; *In re Snell,* 125 Fed. 154; *In re Kane,* 152 Fed. 587; *In re Crafts-Riordon Shoe Co.,* 185 Fed. 931; *In re Shinn,* 185 Fed. 990; *Yumet* v. *Delgado,* 243 Fed. 519; *Griffin* v. *Lenhart,* 266 Fed. 671; *In re Norris,* 283 Fed. 860; *In re Houtman,* 287 Fed. 251; *In re Thompson,* 288 Fed. 385; *Gatell* v. *Millian,* 2 F. (2d) 365. Contra: *In re U. S. Graphite Co.,* 161 Fed. 583. On similar grounds the bankruptcy courts refuse to enjoin the prosecution of foreclosure proceedings under a mortgage, the lien of which is preserved in bankruptcy, if initiated prior to the date of the petition. *Eyster* v. *Gaff,* 91 U. S. 521; *In re Gerdes,* 102 Fed. 318; *Carlin* v. *Seymour Lumber Co.,* 113 Fed. 483; *In re McKane,* 152 Fed. 733; *Sample* v. *Beasley,* 158 Fed. 607; *In re Pennell,* 159 Fed. 500; *In re Rohrer,* 177 Fed. 381; *In re Wagner's Est.,* 206 Fed. 364; *In re Schmidt,* 224 Fed. 814; *Amer. Trust Bank* v. *Ruppe,* 237 Fed. 581; *Duncan* v. *Girand,* 276 Fed. 554; *Louisville Realty Co.* v. *Johnson,* 290 Fed. 176; *In re Iroquois Utilities, Inc.,* 297 Fed. 397; *Ft. Dearborn Tr. & Sav. Bank* v. *Smalley,* 298 Fed. 45; *In re Smith,* 3 F. (2d) 40; *In re Gillette Realty Co.,* 15 F. (2d) 193; *In re Hurlock,* 23 F. (2d) 500; *In re Simpson,* 31 F. (2d) 317; *Bushong* v. *Theard,* 37 F. (2d) 690; certiorari denied, 281 U. S.

The trustee in bankruptcy may intervene in such suits to protect the interests of the estate.[7]

It is clear that if the action in the state court was merely in the nature of an execution or proceeding to obtain the avails of the judgment lien it should not have been enjoined by the district court.

The appellees, however, insist that the purpose and function of the creditors' bill was a general disposition and distribution of the debtor's property; that it was a winding up proceeding pursuant to state law, and was therefore superseded by the bankruptcy. They invoke the settled rule that state insolvency laws which are tantamount to bankruptcy because they provide for an administration of the debtor's assets and a winding up of his affairs similar to that provided by the national act are suspended while the latter remains in force, and proceedings under them are utterly null and void whether commenced within four months of the filing of a petition in bankruptcy or before. *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Mayer* v. *Hellman*, 91 U. S. 496; *Hanover Nat. Bank* v. *Moyses*, 186 U. S. 181; *Miller* v. *New Orleans Fertilizer Co.*, 211 U. S. 496; *Stellwagen* v. *Clum*, 245 U. S. 605; *International Shoe Co.* v. *Pinkus*, 278 U. S. 261.

It was pointed out in *Stellwagen v. Clum, supra,* that state laws which provide for sale and distribution of a debtor's property may not amount to insolvency laws; and it was there held that such laws, if not inconsistent with the administration of the bankruptcy act, are available to litigants. Appellees must therefore show that the

763; *In re Marts,* 38 F. (2d) 283. Contra: *In re Dana,* 167 Fed. 529; *In re Kaplan,* 144 Fed. 159; *First Savings Bank* v. *Butler,* 282 Fed. 866.

[7] § 11 (b); U. S. C., Tit. 11, § 29; *In re Porter,* 109 Fed. 111; *In re New England Breeders' Club,* 175 Fed. 501; *In re Kearney Bros.,* 184 Fed. 190.

statutory action in the state court is, in fact, an insolvency proceeding. The certificate states no facts which lead to such a conclusion, nor does it so denominate the creditors' suit. Reference to the statutes of West Virginia, of which we take judicial notice, demonstrates that it is not in that category.

In that State a judgment is a lien on the debtor's real estate as against all except *bona fide* purchasers for value without notice, and as against the latter from the date of docketing it in the county where the land lies.[8] The debtor's real estate cannot be sold under execution. *In re McGraw,* 254 Fed. 442. The plaintiff must resort for enforcement of his judgment against real estate to such a proceeding as is described in the certificate.[9] He may do so without exhausting his legal remedies, as against personal property.[10] The statute provides for a course of procedure such as is described in the certificate,—namely, that the liens and the debtor's real estate shall be determined by a commissioner appointed by the court and, if

---

[8] Code 1849, c. 186, § 6; Code 1860, c. 186, § 6; Code 1868, c. 139, § 5; 1882, c. 126, § 5; Code 1923, c. 139, § 5; Code 1931, c. 38, art. 3, § 6; *In re McGraw,* 254 Fed. 442. And execution is not needed to make the judgment such a lien. *Maxwell* v. *Leeson,* 50 W. Va. 361; 40 S. E. 420.

[9] "The lien of a judgment may be enforced in a court of equity after an execution or fieri facias thereon has been duly returned to the office of the court or to the justice from which it issued showing by the return thereon that no property could be found from which such execution could be made: *Provided,* That such lien may be enforced in equity without such return when an execution or fieri facias has not issued within two years from the date of the judgment." . . . Code 1849, c. 186, § 9; Code 1860, c. 186, § 9; Code 1868, c. 139, § 8; 1872, c. 30; 1882, c. 126, § 7; 1891, c. 95, § 7; Code 1923, c. 139, § 7; Code 1931, c. 38, art. 3, § 9.

[10] *Price* v. *Thrash,* 30 Grat. 515. (The statutory provision of West Virginia is taken from that of Virginia: Code (Va.) 1849, p. 709, c. 186, § 9.)

the claims which he reports be not paid, a decree shall be made for a sale of the real estate subject to the liens so far as may be necessary to pay them according to their priorities, if any. If a lien-holder, after notice has been given of the proceeding as required by the statute, does not appear and present his claims he is barred from participation, except that if a surplus remain after the payment of claims presented he may share in such surplus upon proving his claim at any time before final decree. There is also a provision for the presentation and participation of lien claims where judgment has been recovered before final decree in the creditors' action. This statute says nothing about a distribution of assets amongst general creditors. It contains no provision that lien claims presented which cannot be paid because the proceeds of the sale are insufficient shall be wiped out as debts of the defendant. It does not purport to discharge the debtor from his indebtedness generally. It is merely a proceeding in equity to do what would be done by a sheriff or marshal under an appropriate writ for the sale of real estate in execution at law. *In re McGraw, supra.* Such officer upon receiving the proceeds of a judicial sale would under the supervision of the court pay them to those whose liens were discharged by the sale. He would marshal the liens against the proceeds precisely as this statute directs the chancellor to do. The act is in no sense an insolvency statute, and a proceeding thereunder is not therefore avoided by the adjudication of the debtor as a bankrupt. On the contrary, it is a mere proceeding to enforce a valid lien or liens against the real estate bound thereby, and falls within the rule announced in *Metcalf* v. *Barker, supra.*[11] This is the view of the Supreme Court

---

[11] The bill in *Metcalf* v. *Barker* was a true creditors' bill, seeking to make available to a judgment creditor assets which could not be reached by an execution at law. *Jones* v. *Green*, 1 Wall. 330; *Dunphy*

of West Virginia, which has held that the action is merely one to enforce liens, and that where the bankruptcy of the debtor occurred six months after its institution, it need not be stayed, since the state court which had first acquired jurisdiction was entitled to proceed to final decree. *Abney Barnes Co.* v. *Davy-Pocahontas Coal Co.*, 83 W. Va. 292; 98 S. E. 298.

It is suggested that the commissioners appointed by the state court were in effect receivers, and it was stated in argument that they did not qualify by giving bond until within four months of the filing of the petition in bankruptcy, and that therefore the state court action should be enjoined and the property taken into possession of the bankruptcy court. But as above said, the statute of West Virginia merely substitutes these commissioners for the usual judicial officer who makes a sale and reports the result thereof to the court.[12]

Assuming them to be receivers, their function is not that of an officer charged with winding up the affairs of the debtor, such as would cause a conflict with the bankruptcy law.[13] Moreover, we find nothing in the certificate to the effect that the commissioners had not qualified more than four months prior to the filing of the petition in the bankruptcy court.

The appellees rely upon *In re Watts,* 190 U. S. 1. But that case does not support their contentions. It is suffi-

v. *Kleinschmidt,* 11 Wall. 610, 614; *Taylor* v. *Bowker,* 111 U. S. 110, 116; *National Tube Works Co.* v. *Ballou,* 146 U. S. 517. The bill in this case assumes the existence of the lien on the property and is a mere measure to enforce it.

[12] Code 1860, c. 178; Acts 1882, c. 142; 1899, c. 49; 1903, c. 15; 1915, c. 76. Code 1923, c. 132; Code 1931, c. 55, art. 12. See *In re McGraw, supra.*

[13] See *In re Smith,* 92 Fed. 135; *In re Lengert Wagon Co.,* 110 Fed. 927; *In re Storck Lumber Co.,* 114 Fed. 360; *In re F. A. Hall Co.,* 121 Fed. 992; *In re Salmon,* 143 Fed. 395; *In re Weedman Stave Co.,* 199 Fed. 948.

cient to say that there a state court made an order appointing a general receiver for a corporation. He proceeded to inventory and appraise the assets of the debtor, asked for orders requiring the creditors to prove their claims, and was proceeding to a complete winding up. Within a month and a half after the appointment a petition in bankruptcy was filed. This Court said:

" We do not understand it to be contended that the passage of the bankruptcy act in itself suspended the statute of Indiana in relation to the appointment of receivers, but only that when the proceedings for such appointment took the form, as they did here, of winding up the affairs of the insolvent corporation, the proceedings in bankruptcy displaced those in the state court and terminated the jurisdiction of the latter."

This was merely a statement of the well settled principle that a general winding up receivership is tantamount to an insolvency proceeding which will be superseded by bankruptcy, and, a fortiori, if, as in that case, the petition is filed within four months of the appointment of the receiver. The language quoted from that case by appellees respecting the paramount and exclusive jurisdiction of the court of bankruptcy must be read in connection with the facts on which it was predicated.

Most of the cases cited by the appellees to the effect that the initiation of bankruptcy proceedings confers on the district court jurisdiction to enjoin pending suits in state courts deal with the situation where a lien was acquired within four months of the filing of the petition, or where, after the filing of the petition an action was begun to enforce a lien valid in bankruptcy. As heretofore noted, there are a few cases which have held that the bankruptcy court may enjoin proceedings, brought prior to the filing of the petition, to enforce valid liens which are more than four months old at the date of bankruptcy; [14] but

---

[14] See Note 6, supra.

these cases are contrary to the decisions of this Court and to the great weight of federal authority.

*The question is answered " No."*