**In re WAIKIKI HOBRON ASSOCIATES, a limited partnership, Debtor.**

**Bankruptcy No. 79–00206.**

United States Bankruptcy Court, D. Hawaii.

Sept. 23, 1982.

Diane Hastert, Honolulu, Hawaii, for debtor.

Randolph Slaton, Honolulu, Hawaii, for Trustee.

Neil F. Hulbert, Honolulu, Hawaii, for Dynamic Industries.

Lawrence White, Deputy Corp. Counsel, City and County of Honolulu, Honolulu, Hawaii, for City and County of Honolulu.

William H. Dodd, Honolulu, Hawaii, for Central Hobron Associates.

### MEMORANDUM DECISION AND ORDER

JON J. CHINEN, Bankruptcy Judge.

On August 17, 1982, the Debtor, by and through its general partner, Dora Kong Corporation, filed a Motion to (1) Reinstate

and Continue Proceedings under Chapter XII, (2) Restore Debtor as Debtor-in-Possession, (3) Discharge Trustee, and (4) Revoke Order Confirming Plan.

On August 27, 1982, a hearing was held on Debtor's motion filed on August 17, 1982, at which time several attorneys representing the Debtor and various entities were present. At said hearing, SAJE Ventures II, (hereinafter "SAJE II"), stated that it was ready to propose a plan of arrangement whereby it would seek to obtain financing for the construction of the Project through Investment Mortgage Incorporated, (hereinafter "IMI"), and other participating lenders. There was no firm commitment of any loan presented to this Court. The motion was taken under advisement.

Based upon the memoranda submitted and the arguments of counsel, the Court finds as follows:

On December 2, 1977, a mortgage foreclosure proceeding against certain parcels of land located at 343 Hobron Lane, Honolulu, Hawaii, (hereinafter the "Hobron Property"), now owned by Waikiki Hobron Associates (hereafter "Debtor"), was initiated in the First Circuit Court, State of Hawaii, in *Amfac Financial Corp. v. Clifford Pok Sung Shin, et al.*, Civil No. 53231. Pursuant to Findings of Fact, Conclusions of Law and Interlocutory Decree of Foreclosure issued in Civil No. 53231 on February 24, 1978, Mervyn Lee was appointed commissioner to sell the Hobron Property.

On March 27, 1979, Dynamic Industries Corporation (hereinafter "DIC") filed with the First Circuit Court, State of Hawaii, an Application for Mechanic's and Materialman's Lien in *Dynamic Industries Corporation v. Waikiki Hobron Associates,* M.C. No. 3519 (hereafter "M.C. 3519").

On May 16, 1979, an Order Authorizing Attachment of Mechanic's and Materialman's Lien was filed in said M.L. 3519 and also on May 16, 1979, said Order was filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii as Document No. 938666 and noted on Transfer Certificates of Title Nos. 200952, 200953, 201717 and 220457.

On May 18, 1979, Debtor, filed herein an original petition for an arrangement under Chapter XII of the Bankruptcy Act pursuant to Rule 12–6 of the Rules of Bankruptcy Procedure. Debtor's action stayed all further efforts of Amfac Financial Corporation and DIC to foreclose on their mortgage and mechanic's and materialman's lien, respectively.

On May 29, 1979, the Debtor was authorized to operate its business and manage its property as a debtor-in-possession. At that time, the Debtor was the owner of three contiguous parcels of real property and was the purchaser under an agreement of sale of a fourth parcel of real property, all of which are located at 343 Hobron Lane, in Waikiki, Honolulu, Hawaii. In connection therewith, the Debtor had been previously issued building permits by the Building Department of the City and County of Honolulu for the construction of a 43-story, 596 unit condominium project (hereinafter "Project") on the aforementioned four parcels of real property.

The building permits, which specifically included Permit No. 73126 issued on September 29, 1976, were due to expire on April 16, 1980. As a result, pursuant to the Debtor's motion, this Court entered herein on August 2, 1979 an order tolling all times allowed for performance under the building permits during the pendency of this action.

On October 29, 1979, an Order Confirming Plan was entered herein confirming the Debtor's First Modified Real Property Arrangement (hereinafter "Arrangement"), under which the Debtor intended to develop the Project. In said Arrangement, Article IV thereof provided that all stays affecting class 3 creditors of the Debtor shall cease to exist upon the confirmation of the plan.

DIC, a lien holder, is a class 3 creditor within the meaning of the confirmed plan. On January 23, 1981, after the confirmation of the plan, DIC commenced an action in the First Circuit Court, State of Hawaii, in Civil No. 60373 to foreclose its mechanic's lien on Debtor's Hobron property.

On July 24, 1981, there was entered in Civil No. 60373 Findings of Fact, Conclusions of Law and Interlocutory Decree of Foreclosure whereby Masato Doi, Esq., was appointed commissioner and as such, was authorized and directed to sell Debtor's Hobron property at a public auction.

Before the commissioner was able to sell Debtor's Hobron property, on October 15, 1981, pursuant to Rule 12–41(a)(2) of the Rules of Bankruptcy Procedure, the Debtor filed an application seeking an order that it be adjudicated a bankrupt. And on the same date this Court entered an Order adjudicating Debtor a bankrupt.

Subsequent to the adjudication of Debtor, this Court on October 28, 1981, issued an Order for First Meeting of Creditors and Fixing Times for Filing Objections to Discharge and for Filing Complaint to Determine Dischargeability of Certain Debts, Combined with a Notice of Automatic Stay as provided in Bankruptcy Rules 401 and 601 (herein the "Notice of Automatic Stay").

On November 20, 1981, William K. M. Chee was duly appointed the trustee in bankruptcy (hereinafter "Trustee") for the estate of the Debtor and Mr. Chee is presently qualified and acting in said capacity.

On March 4, 1982, the Trustee filed herein a Complaint For Authority to Sell Property Free and Clear of Liens, therein seeking to sell the subject real property, together with other related assets of the Debtor, free and clear of all liens. The Trustee subsequently filed a Motion for Summary Judgment which has yet to be resolved.

On March 12, 1982, the City and County of Honolulu filed herein a First Amended Complaint to Vacate Order Tolling Running of Time to Perform Under a Building Permit against the Trustee, therein seeking to terminate the aforesaid Order tolling all times allowed for performance under the building permits during the pendency of this action. The trial was held on August 17, 1982. This matter is under advisement as of the date hereof and said Order is therefore still in full force and effect.

On August 17, 1982, the Debtor, by and through its general partner, Dora Kong Corporation, filed the instant Motion to (1) Reinstate and Continue Proceedings under Chapter XII, (2) Restore Debtor as Debtor-in-Possession, (3) Discharge Trustee, and (4) Revoke Order Confirming Plan.

There is no doubt that this Court has the authority to vacate the order adjudicating the Debtor and to order the reinstatement or continuation of the original Chapter XII case. *In re Silverman*, 5 Bankr.Ct.Dec. 499, Bankr.L.Rptr. (CCH) ¶ 67,220 (S.D.N.Y. 1979), *In re Rosslyn Development Co., Inc.*, 13 C.B.C. 660, 3 Bankr.Ct.Dec. 794 (D.D.C. 1977).

To determine whether or not to vacate the order adjudicating the Debtor and order the reinstatement or continuation of the original Chapter XII proceedings, the Court must determine what is in the best interests of the creditors and whether or not Debtor should be allowed a second chance to submit another plan.

In the instant case, Debtor filed a Petition in Chapter XII proceedings shortly before the hearing on a motion to confirm a private sale in a mortgage foreclosure proceeding in the state court. Under the First Amended Plan of Arrangement which was confirmed, all of the mortgagees were paid in full upon confirmation of the plan. And, under said plan, the mechanic lienholders were to be paid upon "the recordation of the construction loan" and in the meantime would be allowed to pursue whatever lien remedies were available to them.

DIC enforced its lien rights in the state court and on July 24, 1981 obtained an Interlocutory Decree of Foreclosure. Before the commissioner was able to sell the property, Debtor applied ex parte for and was ajudicated a bankrupt on October 26, 1981, whereby another notice of stay was issued, thereby preventing any further effort by DIC to foreclose on its mechanic's lien.

Subsequent to the adjudication of Debtor, the court-appointed Trustee filed a Complaint to sell Debtor's Hobron Property free and clear of all liens. Thereafter, the City

and County filed a Complaint to vacate the order tolling the running of time on the building permits.

■ The Debtor now seeks to (1) reinstate and continue the Chapter XII proceeding (2) restore Debtor-in-possession (3) discharge the trustee and (4) revoke the order confirming the First Amended Plan. The Debtor contends that, when the Court grants the foregoing requests, it will be able to file a new plan which will take care of all the creditors, secured and unsecured. However, the Debtor has not submitted a definite plan showing the source of the funds to pay the creditors. The proposed plan submitted by SAJE II indicates that it will look to IMI and participating lenders for financing. IMI was previously involved in a plan of financing for the Waikiki Hobron project which was later aborted and which was one of the reasons that caused Debtor's creditors to bring actions against the Debtor, resulting in Debtor filing its petition for relief.

■ Debtor is entitled to have at least one opportunity to submit a plan of arrangement in a Chapter XII proceeding. To that end, the Bankruptcy Court may defer the creditors and governmental authorities for a reasonable time to permit the Debtor to obtain the necessary financing, and/or to reorganize itself. The Court emphasizes a "reasonable time", for the Bankruptcy Court does not have the authority to deny for an indefinite period the creditors and governmental authorities from enforcing the remedies available to them.

In the instant case, over three years have elapsed since the filing of the original petition, which was filed shortly prior to the sale of the property under foreclosure in the state court. Under the plan submitted by Debtor and confirmed by the Court, the mechanic lienors were authorized to enforce their remedies in the state courts. In accordance with the provisions of the confirmed plan, DIC enforced its mechanics lien in the state court, resulting in the issuance of an Interlocutory Decree of Foreclosure whereby a commissioner was appointed to sell the Debtor's property at auction.

When the state commissioner was appointed to sell Debtor's property at public auction, at that moment the commissioner obtained custody of the property and the Bankruptcy Court no longer had summary jurisdiction over Debtor's real property.

In its confirmed plan, Debtor had agreed that the mechanic lienors may proceed to enforce their mechanic liens in the state court. When the state court commissioner was appointed to sell the property at auction, the possession of the property was in the custody of an adverse claimant (the commissioner), "and hence the stay provision of Bankruptcy Rule 601 are inapplicable". *In re Rosslyn Development Co., Inc., supra; Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); *Straton v. New,* 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060 (1931).

The Debtor had more than adequate time to consummate its confirmed plan. The permits issued by the City were to have expired on April 16, 1980. Here, it is September 1982, and construction of the building is still not completed. In fact, there is no definite date for the commencement of construction. Everything is indefinite. This Court cannot toll the running of time forever.

If the plan proposed by SAJE II had presented definite commitments for the financing of a plan, this Court may have found cause to reinstate the original Chapter XII plan and to give Debtor a second opportunity to submit another plan. Everything, however, is too indefinite. SAJE II expects to rely on IMI and other participating lenders to provide the necessary financing. This is exactly the arrangement that had been presented to Debtor prior to Debtor filing its petition. The Court finds the plan proposed by SAJE II too indefinite and not feasible at this time.

Debtor had its opportunity to submit a plan of arrangement in the original Chapter XII. Debtor took advantage of that opportunity and submitted a plan which was confirmed. Under that plan, Debtor paid all of

the mortgagees and agreed to pay the mechanic lienholders upon "the recordation of the construction loan", which was expected to be shortly after the confirmation of the plan.

The mechanic lienholders, however, were never paid under the plan. When DIC, one of the mechanic lienholders under the provisions of the confirmed plan, sought to enforce its lien by selling Debtor's real property, Debtor moved to stay DIC's action by voluntarily having itself adjudicated. Now, Debtor seeks to further delay payment to DIC and other mechanic lienholders by requesting that the original Chapter XII be reinstated and that the order confirming plan be revoked.

Without any feasible plan being presented, the Court does not find cause to reinstate and continue the original Chapter XII case. *In re Silverman,* 5 Bankr.Ct.Dec. 499, Bankr.L.Rptr. (CCH) ¶ 67,220 (S.D.N.Y. 1979).

Based upon the foregoing discussion and the record herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Debtor's Motion to (1) Reinstate and Continue Proceedings under Chapter XII, (2) Restore Debtor as Debtor-In-Possession, (3) Discharge Trustee, and (4) Revoke Order Confirming Plan is denied.