**In the Matter of Frank SMITH, Debtor.**

**UNITED STATES of America, and Bill Morris, Revenue Officer of the Internal Revenue Service, Plaintiff,**

**v.**

**Frank SMITH, Defendant.**

**Bankruptcy No. 79–00937–BWE–W–4.**

United States Bankruptcy Court,
W. D. Missouri, W. D.

Oct. 30, 1979.

Kenneth Josephson, Asst. U. S. Atty., A. M. Jacobson, Internal Revenue Service, Kansas City, Mo., for plaintiff.

Paul T. Miller, Kansas City, Mo., for defendant.

## FINAL JUDGMENT DENYING PLAINTIFF'S COMPLAINT FOR RELIEF FROM THE AUTOMATIC STAY

DENNIS J. STEWART, Bankruptcy Judge.

The Internal Revenue Service filed its complaint for relief from the automatic stay imposed by Rule 13–401 of the Rules of Bankruptcy Procedure, materially stating that:

> "[t]o collect the taxes due and owing for 1974, 1977 and 1978, Revenue Officer Bill Morris on June 20, 1979 levied upon the residence of debtor and his wife by seizure. The seizure occurred prior to the date of the filing of the petition herein."

The Internal Revenue Service accordingly requests that it be granted relief from the automatic stay so that it may sell the residence and apply the proceeds against the tax liability, some $5,879.22 as of the time of the filing of the chapter XIII petition herein. Otherwise, it is contended in the complaint herein, that "the plaintiff will not be able to collect income taxes due and owing from the debtor and his wife for the taxable years 1974, 1977 and 1978, even though Irma L. Smith is not a party to this proceeding."

Nevertheless, the plaintiff filed a claim in these wage earner proceedings, on August 23, 1979, for the income taxes for the years 1974, 1977 and 1978, plus accrued and accruing interest. And, in its plan of arrangement herein, the debtor proposes to pay the indebtedness at the rate of $194.00 per month. It therefore appears that the process of payment would consume about two and one half years;[1] that, in combination with the other provisions of the plan of arrangement, this provision would make for a feasible arrangement;[2] and that this pro-

---

1. Under the presently existing plan of arrangement, the debtor proposes to pay $300 per month into the plan. When the costs of administration and attorney's fees are deducted from that payment, some $194 per month will go toward retirement of the indebtedness to the Internal Revenue Service. Thus, the plan would propose to retire the indebtedness in just over 30 months.

2. Under the current practice of the court of bankruptcy in this district, most Chapter XIII plans in this district which are of a duration of 48 months or less are considered to be feasible as to their duration. Even if the more restrictive standards of the new Bankruptcy Code

posed voluntary method of repayment would, from the standpoint of the rehabilitational purposes of chapter XIII, be preferable to the sale of the debtor's residence.

▉ The primary question facing the chapter XIII court, however, is whether it has the jurisdiction to impose the restraining effect of the automatic stay against the Internal Revenue Service which has completed its seizure of the property in question and thus, according to cases which have been decided respecting the effect of a seizure, has succeeded in transferring all title to the property to the United States. See, e. g., *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975); *United States v. Pittman*, 449 F.2d 623 (7th Cir. 1971); *Rosenblum v. United States*, 300 F.2d 843 (1st Cir. 1962); *United States v. Eiland*, 223 F.2d 118 (4th Cir. 1955).[3]

In respect to private (as opposed to governmental) claimants and creditors, the vesting, prior to the date of the filing of a wage earner petition, of legal title in them has not been held to preclude the automatic stay's application to prevent the taking of the real property from the debtor's actual possession and use. Thus, even when a mortgage is deemed to place all of the legal title in the mortgagee, the courts have held that the interests of the debtor warrant the

application of the automatic stay in chapter XII proceedings. *Hallenbeck v. Penn Mutual Life Ins. Co.,* 323 F.2d 566, 573 (4th Cir. 1963). Cf. *In re Townsend,* 348 F.Supp. 1284 (W.D.Mo.1972). See also the Advisory Committee's Note to Rule 13–401 of the Rules of Bankruptcy Procedure to the following effect:

"While under § 606(1) and (4) and 646(2) the plan may not deal with claims secured by interests in real property, it has been recognized that the term 'property' as used in both § 611 and § 614 includes such interests, that the court has the power to stay foreclosure of liens on real property, and that such power is properly exercised where the debtor has an equity in the property or it is necessary to his performance under the plan, the creditor's security is not impaired by the stay, and the stay is conditioned on appropriate provision for curing defaults and maintaining payments on the secured claim."

The plaintiff seeks to distinguish these authorities on the ground that "[t]he residence was not the property of the Debtor as contemplated by section 614 of the Bankruptcy Act" because it had been "levied upon and seized prior to the filing of the petition and, thus, title and possession was in the United

---

should be applied (and they are not applicable to the case at bar, which was filed prior to October 1, 1979), the time proposed for the paying off of the Internal Revenue Service's claim would be within the 3-to-5-year limit set forth by Section 1322(c).

**3.** The Government also cites *Straton v. New*, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060 (1931), for the proposition that (as the Government words it), "(t)he property seized and in possession of the United States prior to bankruptcy is not subject to administration by the Bankruptcy Court, and may be sold by the Government subsequent to the commencement of the proceeding." The rule of *Straton v. New, supra,* however, is to the effect that a judgment lien obtained on a suit instituted more than four months prior to bankruptcy is not voidable at · the suit of the trustee in bankruptcy and that the bankruptcy court, accordingly, will not stay state court proceedings to foreclose those liens. "(T)he federal courts have with practical unanimity held that where a judgment which constitutes a lien on the debtor's real estate is recovered more than four months prior to the

filing of the petition, the bankruptcy court is without jurisdiction to enjoin the prosecution of the creditor's action, instituted prior to the filing of a petition in bankruptcy, to bring about a judicial sale of the real estate." 283 U.S. at 326–327, 51 S.Ct. at 468. But the decision in *Straton v. New, supra,* involved a straight bankruptcy, not a wage earner, proceeding. It is well-established that the automatic stay in wage earning proceedings has a broader purview and effect than in straight bankruptcy proceedings. "(T)he stay under Rule 13–401 is broader than those under bankruptcy rules 401 and 601" by virtue of the very fact that it gives the Chapter XIII court "jurisdiction of all the debtor's property wherever located." 10 Collier on Bankruptcy para. 23.-05, p. 86 (1978). And this includes the power to stay lien foreclosures and, accordingly, to stay actions which would affect the debtor's equitable interests, even when legal title may not perhaps be vested in him. See, e. g. *In re Willet,* 265 F.Supp. 999 (S.D.Cal.1967).

States." But the debtor has an interest in his residence, under the circumstances of the case at bar, just as surely as a mortgagor has an equity interest in mortgaged property. For, in either case, the value which exists in excess of the creditor's claim must be deemed to belong to the debtor.

■ The Government, however, contends that the court of bankruptcy is without summary jurisdiction to determine the validity *vel non* of its claim of complete title and right to immediate possession of the subject real property. In support of this contention, an unbroken chain of irrefutable authority is cited, including *Phelps v. United States, supra,* and its progeny.[4] But this court does not hereby purport to determine the validity and extent of that claim, but only to stay the Government's exercise of right to immediate possession in consonance with the chapter XIII court's power and duty to stay acts or actions against property in which the debtor may have an interest or which may be necessary to the rehabilitation under chapter XIII of the

Bankruptcy Act. The effect of the automatic stay is not only to enjoin actions in other courts, as the Government appears to contend,[5] but also to restrain all other "acts" to enforce liens or claims against the property.[6]

■ Finally, the wage earner law itself provides, under Section 1080, Title 11 United States Code, that "the United States has the *option* [thereunder] to enforce its claim by participating in the Chapter XIII plan *or* of proceeding against the debtor directly." *In re Gates,* 256 F.Supp. 1, 3 (E.D.Wis.1966) (Emphasis added.). The statute does not appear, by its letter, to grant the Government the unfettered right to enforce a debt to it by *both* such means.[7] Therefore, when a chapter XIII debtor, as in the case at bar, appears to be using his best efforts to pay off his debt to the Internal Revenue Service within a reasonable time through the wage earner plan,[8] the court of bankruptcy should keep in effect the automatic stay, thereby favoring a means of reasonable

4. See cases cited on pages 2–3 of the text of this memorandum, *supra,* and *In re Resthaven Psychiatric Hospital,* 426 F.Supp. 516, 517 (C.D.Cal.1977).

5. Thus, in its most recent brief filed with the court, the Government refers to the following statement made by the court in its order of October 4, 1979: "(T)he effect of the automatic stay provided by Rule 13–401 of the Rules of Bankruptcy Procedure is to stay the prosecution of actions in other courts, including those with respect to which the court of bankruptcy would not have jurisdiction . . . . Otherwise, it is fundamental that the wage earner chapter would be wholly without efficacy and subject to dismemberment of the wage earner's *estate by actions in other Courts."* As to this statement, the Government states that "(t)his is not the situation in the instant case. The debtor's residence has been seized administratively under section 6331 and will be sold administratively under section 6335. No Court action is necessary to seize and sell the Debtor's residence. Thus, there is no prosecution of actions in other courts to enjoin." The automatic stay provided by *section* 13–401 of the Rules of Bankruptcy Procedure, however, and the accordant power of the court of bankruptcy to enjoin is sufficiently broad to cover non-judicial "acts" and prevent the dismemberment of the wage earner estate by non-judicial as well as judicial means. Subsection (a) of Rule 13–401 operates to stay "any *act* or the commence-

ment or continuation of any court proceeding . . . ." (Emphasis added.)

6. See note 5, *supra.*

7. Section 1080 provides that "all taxes which may be found to be owing to the United States or any State from a debtor within one year from the date of the filing of a petition under this chapter, and have not been assessed prior to the date of the confirmation of a plan under this chapter, and all taxes which may become owing to the United States or any State from a debtor shall be assessed against, may be collected from, and shall be paid by the debtor: *Provided, however,* That the United States or any State *may in writing accept the provisions of any plan dealing with the assumption, settlement, or payment of any such tax."* And, ordinarily, when there is an acceptance of a plan, as in this case, it means consent to the summary jurisdiction of the court of bankruptcy. *In re Balogh & Co.,* 139 U.S.App.D.C. 281, 284, 432 F.2d 1343, 1346 (D.C.Cir.1970). Further, section 1080, *supra,* and the acceptance of the plan of arrangement herein constitute a waiver of any sovereign immunity which the Internal Revenue Service might otherwise enjoy. See 10 Collier on Bankruptcy para. 23.05, p. 86, n. 4 (1978).

8. See note 2, *supra.*

payment much less draconian than the taking and selling of the debtor's residence.

By reason of the same statute, Section 1080, Title 11, United States Code, there can be no question of the court's power in this case to apply the automatic stay with respect to the Government agency here involved.

It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED, AND DE-CREED that the plaintiff's complaint for relief from the automatic stay be, and it is hereby, denied.